UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| STEPHANIE HUTCHINSON, an individual;<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL EXPERIENCE SPECIALISTS, INC.; EMPLOYEE(S)/AGENT(S) DOES 1–10; and ROE CORPORATIONS 11–20, inclusive;<br><br>Defendants. | Case No. 2:16-cv-02397-MMD-GWF<br><br>ORDER |

**I.   SUMMARY**

Defendant Global Experience Specialists, Inc. ("GES") moves for summary judgment ("Motion) in this action chiefly brought under the Family and Medical Leave Act ("FMLA"). (ECF No. 25.) The Court will grant the Motion in part and deny it in part.[1]

**II.   RELEVANT BACKGROUND**[2]

GES employed Plaintiff Stephanie Hutchinson as a supervisor for its National Service Center ("NSC") in 2012. (ECF No. 26 at 11, 14, 32.) Hutchinson was hired, and managed, by the Director of NSC, Patricia James. (*Id.* at 11–12; ECF No. 1 at 7; ECF No. 26 at 23.) At some point, Hutchinson started having eye problems associated with her diabetes, and began receiving treatment for it. (ECF No. 26 at 14, 17.) In March 2014, she

///

---

[1]The Court has reviewed all briefs relating to the Motion. (ECF Nos. 25, 31, 36.)

[2]The facts recited here are undisputed unless otherwise noted.

1  was diagnosed with a severe diabetic eye disease. (*Id.* at 16.) At times, Hutchinson's eye condition would flare up and cause her eyes to start bleeding. (*Id.* at 17–18.) Due to the possibility of flare ups, which would affect her ability to work, Hutchinson requested intermittent FMLA leave, which GES approved in early May 2014. (*Id.* at 17–19, 31; ECF No. 33-5 at 8–9, 18.)

On September 10, 2014, Hutchinson took time off work because her eye(s) unexpectantly began to bleed. (ECF No. 33-2 at 1–19; ECF No. 26 at 35, 93–94.) James was not at work. (ECF No. 33-2 at 17; ECF No. 33-5 at 7.) James had directed employees to contact NCS Manager Sheila M. Glenn in her absence, if they needed to take off from work. (ECF No. 26 at 52; ECF No. 33-5 at 27.) Hutchinson notified another supervisor/co-worker, Adriane Bell, that morning, of her needed absence from work. (ECF No. 33-2 at 17–18; ECF No. 33-5 at 26–27; ECF No. 26 at 35, 53.) Bell informed Glenn, who in turn notified James of Hutchinson's absence. (ECF No. 33-2 at 17–18; ECF No. 33-1 at 24; ECF No. 33-5 at 26; ECF No. 26 at 35, 93–94, 99.)  Ultimately, James terminated Hutchinson, at least in part, because she did not directly notify Glenn. (ECF No. 33-5 at 20, 24–27.)

Hutchinson asserts two claims for relief against GES: (1) for violating the FMLA; and (2) for negligent hiring, training, and supervision under Nevada law. (ECF No. 1.) GES seeks summary judgment on both claims, and alternatively requests that the Court limits Hutchinson's possible damage recovery. (ECF Nos. 25, 36.)

**III.    LEGAL STANDARD**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could

find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250–51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. GES's Request for Summary Judgment on Hutchinson's Claims

#### 1. FMLA Claim

Hutchinson claims GES violated the FMLA by interfering with her exercise of her rights under the statute, specifically 29 U.S.C. § 2615(a)(1). (ECF No. 31 at 12–13.)

///

Drawing all reasonable inferences in Hutchinson's favor, the Court denies summary judgment on Hutchinson's FMLA claim.

Section 2615(a)(1) provides: "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise, any right provided under this subchapter." Pertinently, the FMLA "guarantees that an employee's taking leave will not result in a loss of job security or in other adverse employment actions." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003); *see also id.* at 1133 (quoting 29 CFR § 825.220(c)) ("The regulations [for the FMLA] specific one form of employer interference—i.e., 'employers cannot use the taking of FMLA leave as a negative factor in employment actions.'"); *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001) ("[N]or can FMLA leave be counted under "no fault" attendance policies."). "An employer's good faith or lack of knowledge that its conduct violates FMLA does not protect it from liability." *Xin Liu*, 347 F.3d at 1135 (citing *Bachelder*, 259 F.3d at 1130). A *McDonnell Douglas*[3] burden shifting type frame work does not apply to FMLA termination cases where the taking of FMLA leave is a factor in the termination. *Id.* at 1136.

In short, to prevail on her FMLA interference claim, Hutchinson must show that she took FMLA leave, and that her "taking of FMLA-protected leave constituted a negative factor in [GES's] decision to terminate her." *Id.* The latter must be proven by a preponderance of the evidence, which may be established "using either direct or circumstantial evidence, or both." *Id.*

As a factual matter it is undisputed that Hutchinson's absence from work during the flare up of her eye condition on September 10, 2014, constituted FMLA-protected leave. (*See generally* ECF No. 25.) GES merely argues that a reasonable jury could not find that Hutchinson's use of such leave was a negative factor in the decision to terminate her. (*Id.* at 6.) But, GES's explanation for terminating Hutchinson appears to be fluid.

///

///

---

[3]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

4

In its Motion, GES indicates that it terminated Hutchinson for her FMLA-related absence because Hutchinson failed to follow proper procedures or protocols in reporting her absence from work. (ECF No. 25 at 7; *see also id.* at 4 (noting in bolded words an absenteeism and tardiness policy whereby "[f]failure to notify your immediate Supervisor may result in immediate termination"); ECF No. 33-5 at 9 (James testifying that Hutchinson still needed to follow "protocol" for calling out).) Hutchinson also gleaned this much to be, at least part of, GES's explanation for her termination, as Hutchinson's response (ECF No. 31) argues the lack of any formal attendance policy that she, as a supervisor, was required to follow. (*Id.* at 15–16; *see also* ECF No. 33-2 at 3–5 (Bell noting in her deposition the various schedule options for the managing team, and indicating that supervisors "didn't punch a time clock," affirming that supervisors worked on an "honor system," that the policy regarding attendance was just to "communicat[e] with the team," and suggesting general leniency in leaving work in an emergency situation); ECF No. 33-1 at 5–6 (Glenn stating in her deposition that supervisors never had set schedules, confirming supervisors did not clock in, that their hours were not tracked, and agreeing that supervisors had an honor system).)

However, in its reply, GES contends that Hutchinson was not fired for an attendance policy occurrence. (ECF No. 36 at 4, 7; *see also* ECF No. 33-5 at 24 (James testifying she never had an attendance issue with Hutchinson).) GES claims Hutchinson was instead terminated for *failure to follow* James' alleged *directive* that Hutchinson (and others) contact Glenn if they needed to be absent from work. (ECF No. 36 at 4–5; *see also* ECF No. 25 at 5; ECF No. 33-5 at 24 (James testifying that she terminated Hutchinson for failing to follow instructions).) GES specifically argues that the termination was a consequence of the failure to follow directive related to September 10, 2014, absence in addition to two other distinct "performance" related issues[4] within the span of four months.

///

---

[4] After GES approved Hutchinson for intermittent FMLA leave in early May 2014, Hutchinson received a favorable performance review for the quarter later in the month. (ECF No. 33-5 at 8–9, 18–20; ECF No. 26 at 35–36.) But, only several days thereafter, in

1  (*Id.*) Particularly, it appears GES's position is that Hutchinson's act of informing her co-worker/co-supervisor, Bell, instead of directly contacting, or attempting to directly contact, Glenn amounted to subordination. (ECF No. 25 at 4–5; ECF No. 33-5 at 20 (James stating that the combined three disciplined instances made it "very evident" that Hutchinson would no longer follow James' instructions).) *But see Bachelder*, 259 F.3d at 1131 ("The question here is not whether [GES] had additional reasons for the discharge, but whether [Hutchinson's taking of] FMLA-protected leave was used as a negative factor in her discharge.").

Hutchinson argues that GES's directive position is merely pretext for interfering with her FMLA leave. (ECF No. 31 at 3, 8, 13, 20–21.) Hutchinson cites to Glenn's deposition testimony indicating that Glenn was never "left in charge of" the supervisors, and particularly Hutchinson in September 2014. (ECF No. 31 at 16; ECF No. 33-1 at 16–17, 20-21, 23-24; *but see* (ECF No. 26 at 33–34 (Hutchinson conceding that ordinarily if James was absent, Glenn would be responsible for staff and it would be "advisable" to notify Glenn)); (*id.* at 33 (Hutchinson agreeing that James had "advised the staff" that Sheila would be in charge during James' absence).)

As an initial matter, the Court cannot meaningfully separate the failure to follow the alleged directive basis for termination from the failure to follow alleged attendance protocol. The latter is clearly implicated. And, ultimately, whether Hutchinson's FMLA leave taken in September 2014 was *impermissibly considered* as a factor in her

///

---

the same month, Hutchinson was given a written warning for failing to program phones correctly on Memorial Day to indicate the office was closed. (ECF No. 25 at 3; ECF No. 33-5 at 4, 14–16; ECF No. 26 at 23–24.) She was issued a final written warning the following month for failing to properly cancel a conference call. (ECF No. 25 at 3; ECF No. 26 at 32, 50.) Hutchinson suggests that the failure to cancel the meeting was due to an unexpected eye bleeding requiring her to take leave from work. (ECF No. 1 at 6.) There is also noteworthy deposition testimony by James that the usual progression of discipline at GES was "a verbal warning, then a written warning, then a suspension, then a termination," albeit there was discretion to deviate. (ECF No. 33-5 at 13.) *See, e.g., Butler v. Clark County*, No. 2:15-cv-01689-APG-VCF, 2017 WL 9401151, at * 4 (D. Nev. Dec. 28, 2017) (quoting Xin Liu, 347 F.3d at 1136) ("[W]hen disciplinary decisions 'rely on subjective evaluations, careful analysis of possible impermissible motivations is warranted because such evaluations are particularly susceptible to abuse and more likely to mask pretext.'").

termination comes down to whether a jury could find that Hutchinson adequately notified GES of her use of FMLA leave, but GES nonetheless used her taking of said leave as a factor in terminating her. It is evident that Hutchinson's taking of leave was intrinsic to her termination. But, it is up to a jury to find whether the manner in which Hutchinson took leave separately amounted to an act of subordination of James' directive or derision of GES's policy, and was the reason for Hutchinson's termination. Viewing the evidence in the light most favorable to Hutchinson and construing all reasonable inferences in her favor, a material issue of fact exists as to whether Hutchinson failed to follow the proper notification channels when she took her already approved intermittent FMLA leave on September 10, 2014. Hutchinson has pointed to testimony indicating that the GES was lenient on how *supervisors* could provide notice regarding their absence from work. Thus, a jury could reasonably conclude that even given James' alleged directive or any GES attendance policy, Hutchinson did not commit a violation thereof by informing Bell,[5] who in turn informed Glenn about Hutchinson's absence from work.

To be clear, it is for the jury to decide whether GES violated the FMLA, considering the panoply of evidence, the various testimony, and the need to resolve credibility concerns. Presently, the existence of genuine disputes of material fact forecloses a grant of summary judgment in GES's favor on Hutchinson's FMLA claim.[6]

///

///

---

[5]GES extensively focuses on whether Hutchinson was already at work, or called in, at the time her eye(s) flared up precipitating her taking FMLA leave. (ECF No. 36 at 3–4; *compare* ECF No. 26 at 93–94 *with* ECF No. 26 at 34–35.) The Court finds the distinction inconsequential for the purpose of the Motion before the Court. Whether a jury believes, or finds it relevant, if Hutchinson called in or was already at work is for such jury to determine.

[6]The parties reference 29 CFR § 825.303 as providing the pertinent FMLA regulations in emergencies, particularly subsections (a) and (c). (ECF No. 31 at 16; ECF No. 36 at 5–6.) However, these sections do not appear to apply to circumstances in which the employee has already been approved for intermittent FMLA leave. Subsection 825.303(c) appears to be expressly concerned with the employer's requirements for requesting leave in the first instance. Subsection 825.303(a) concerns when the approximate timing of leave is not foreseeable, but also does not clearly apply to a situation where an employee, like Hutchinson, suddenly faces an emergency, the occurrence of which the employer already had anticipatory notice.

### 2. Common Law Negligence

The Court grants summary judgment on Hutchinson's common law claim for negligent hiring, training, and supervision. (ECF No. 1 at 8; ECF No. 31 at 22.) To be successful on this claim under Nevada law, Hutchinson must establish: (1) a general duty on the employer to use reasonable care in the hiring, training and/or supervision of employees to ensure that they are fit for their positions; (2) beach of duty; (3) injury; and (4) causation. *See Okeke v. Biomat USA, Inc.*, 927 F. Supp. 24 1021, 1028 (D. Nev. 2013); *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996).

Here, Hutchinson fails to adequately establish the existence of a duty. Without citation to authority Hutchinson particularly argues that "Defendant had a duty to train and supervise its agents to conform to lawful practices and to adhere to the requirements under the FMLA." (ECF No. 31 at 22.) The Court cannot merely rest on Hutchinson's word to find that GES is required to have its employees "conform to lawful practices," and particularly FMLA regulations, or that such requirement would properly establish the applicable duty obligation. Accordingly, the Court finds that Hutchinson has failed to show a necessary element to meet her burden in opposing summary judgment and thus to prove her entitlement to recover for GES's purported negligent hiring, training, and supervision. Therefore, the Court grants summary judgment in GES's favor on this claim.

### B. GES's Request to Limit Hutchinson's Potential Damage Recovery

GES asks, in the alternative, that the Court enter partial summary judgment precluding Hutchinson from recovering any damages beyond April 28, 2016—the day Hutchinson had a stroke—in the event the Court denies summary judgment on liability. (ECF No. 25 at 9–10; ECF No. 36 at 14.) GES claims, without citation to the record, that Hutchinson became unavailable to work that day. (*Id.*) GES also fails to explain whether Hutchinson continues to be unable or "unavailable" to work. For her part, Hutchinson does not address the matter in her opposing brief. (*See generally* ECF No. 31.) Accordingly, the question of whether Hutchinson's lost wages should be capped is a matter best left for the Court to address in the context of trial.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that GES's motion for summary judgment (ECF No. 25) is denied in part and granted in part. It is denied as to Hutchinson's FMLA claim for relief but granted on the common law negligence claim. The Court declines to rule on GES's request to limit Hutchinson's potential damage recovery.

DATED THIS 3rd day of December 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE