UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEPHANIE HUTCHINSON,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL EXPERIENCE SPECIALISTS INC.,<br><br>Defendants. | Case No. 2:16-CV-02397-MMD-EJY<br><br>**ORDER ON PLAINTIFF'S MOTION TO EXCLUDE AND FOR ATTORNEYS' FEES** |

This matter is before the Court on Plaintiff's Motion to Exclude and For Attorneys' Fees Pursuant to Fed. R. Civ. P. 37 (ECF No. 58). After considering Plaintiff's Motion, Defendant's Opposition to Motion to Exclude and For Attorneys' Fees (ECF No. 59), and Plaintiff's Reply in Support of Plaintiff's Motion to Exclude and For Attorneys' Fees (ECF No. 60), the Court finds as follows.

## *BACKGROUND*

As stated in the Joint Pretrial Order (the "JPO") filed by the parties on July 12, 2019 (ECF No. 57), the above captioned matter is an action for relief under the Family Medical Leave Act ("FMLA"). It is uncontested that Plaintiff, Stephanie Hutchinson, worked for Defendant Global Experience Specialists, Inc. ("GES") as a Supervisor in the national service center until she was terminated on September 25, 2014. According to the JPO, at the time Plaintiff was terminated, she was on intermittent FMLA leave because of an eye condition. Plaintiff claims that her FMLA was a factor in her termination. GES contends the termination had nothing to do with the FMLA, and that she was fired after a series of incidents.

The uncontested facts, as established by the record, show that the Discovery Plan and Scheduling Order was filed on November 9, 2016, with an original discovery deadline of April 14, 2017 (ECF No. 8). Thereafter, there were four extensions of the discovery deadlines with the last

1

extension ending discovery on February 16, 2018 (ECF No. 19). Dispositive Motions were calendared as due on March 19, 2018. *Id.* On December 3, 2018, the Court granted in part and denied in part Defendant GES' Motion for Summary Judgment (ECF No. 38).

Following denial of GES' dispositive motion as to Plaintiff's FMLA claim, the parties engaged in a private settlement before the Judicial Arbitration and Mediation Service, which did not result in settlement. A court ordered settlement conference, held on January 18, 2019, also did not result in settlement. However, it is uncontested that during this settlement conference, in-house counsel for Defendant recalled, suddenly, that Defendant was in possession of documents pertaining to Plaintiff's attendance at work on a critical date in question—September 10, 2014. This recollection occurred after approximately 15 months of discovery, and 11 months after the close of discovery. GES informed the Court and Plaintiff of the existence of these documents immediately and produced them on January 23, 2019, as its Third Supplement to Defendant's Initial Disclosures. The documents produced in January 2019 (Bates Nos. D000366-D000374) are responsive to Plaintiff's Request to Produce No. 32 first propounded on Defendant by mail on September 18, 2017.[1]

---

[1] Plaintiff's Request to Produce No. 32 states:

REQUEST NO. 32: Produce all records showing the hours/times/dates Plaintiff worked for Defendant that are maintained by Defendant including income statements, pay checks, time cards, daily attendance records, sign in/out sheets, clock in/clock out sheets, change of time keeping material, or similar documents that contain information showing the hours/times/dates worked by Plaintiff for the period of September 29, 2013 to September 29, 2014.

In response, Defendant stated:

RESPONSE NO. 32: Defendant objects to this Request to the extent it seeks multiple documents which provide the same basic information. Because Plaintiff was classified as an exempt employee, there is not believed to be documentation showing specific arrival and departure times. The documents appended as D-000292-294 show the normal work days that Plaintiff did not work during the requested time period.

While Defendant suggests that the documents produced are not squarely within the documents requested, the documents produced are clearly within the intent of the Request. Fed. R. Civ. P. 34 requires more than a literal reading of a request. Fed. R. Civ. P. 34 advisory committee's note to 1946 amendment. Instead the receiving party must consider the subject of inquiry and that to which it reasonably relates given the detail provided by the party propounding the request. *See id.* ("We see no reason why all such books, papers and correspondence which related to the subject of inquiry, and were described with reasonable detail, should not be called for and the company directed to produce them . . . .") (citing *Consolidated Rendering Co. v. Vermont*, 207 U.S. 541, 543–544 (1908)).

After several adequate meet and confer attempts, the parties were unable to agree on whether the belatedly produced documents should be excluded or stricken. Plaintiff filed the instant Motion to Exclude and For Attorney's Fees on July 16, 2019. Defendant filed its Response on July 29, 2019, and Plaintiff filed a Reply on August 5, 2019.

Plaintiff moves to exclude the untimely disclosed "Card History" documents that Defendant states purport to show when employees access "certain locked areas of GES . . ." and, therefore, by default, also show when employees do "not access" such areas. Plaintiff contends these documents should be excluded (stricken) because (1) they were produced in violation of Rule 26(a) and (e), and (2) the failure to produce was not substantially justified and is not harmless. Defendant contends that (1) Defense counsel was unaware of the existence of these documents until January 18, 2019, (2) the documents were promptly produced once identified, (3) a deposition of the custodian of the Card History documents was offered as a cure for the late disclosure, and (4) the belated disclosure was harmless.

### *DISCUSSION*

As noted by this Court on several prior occasions, "[b]ecause of heavy caseloads, trial courts enter scheduling orders 'to establish deadlines to foster the efficient treatment and resolution of cases." *Jackson v. American Family Mutual Insurance Co.*, No. 2:10-cv-01874-LRH-PAL, 2012 WL 845646 *3 (March 12, 2012, D. Nev) (citing *Wong v. Regents of University of California*, 410 F.3rd 1052, 1060 (9th Cir. 2005)). Attendant to this proposition is Fed. R. Civ. P. 26, which requires, in pertinent part, that parties must, without waiting for discovery requests, produce to opposing parties "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment…" Fed. R. Civ. P. 26(a)(1)(A)(ii). Although Rule 26 does not mandate when supplements to the initial disclosures must be made, it is clear that supplements must be made "in a timely manner" and:

> if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or as ordered by the court." Fed. R. Civ. P. 26(e). Rule 26(e) does not require that disclosure amendments must be served

before the discovery deadline, only that they must be made "in a timely manner." *Dayton Valley Investors, LLC v. Union Pacific R. Co .,* 2010 WL 3829219 (D. Nev. 2010) ("The rule does not limit the time for supplementation of prior disclosures to the discovery period.").

*Oskel v. Pardee*, No. 2:11-cv-154-GMN-NJK, 2013 WL 1315736 *1 (March 28, 2013, D. Nev.).

The Ninth Circuit grants "wide latitude" to the district court's discretion to issue sanctions under Rule 37(c)(1). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c) provides a range of sanctions, from the most harsh (total exclusion and dismissal of the case) to more moderate (limited exclusion and attorney's fees), to give the district court latitude in matching the degree of noncompliance with the purpose of Rule 26's mandatory disclosure requirements. *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001). When a party fails to comply with a scheduling order and its deadlines, "severe sanctions" and the "exclusion of evidence" may be proper. *Jackson*, 2012 WL 845646 *3. Further, "[t]he Ninth Circuit has recognized that disruption of the court's discovery plan and scheduling order is not harmless." *Id*. (internal citations and quotations removed). Fed. R. Civ. P. 37(c)(1) states: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

In contrast, however, as explained in *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 594 (D. Nev. 2011), Rule 37(c)(1):

> does not require the court, in all instances, to exclude evidence as a sanction for a late disclosure that is neither justified nor harmless." *See Design Strategy, Inc. v. Davis,* 469 F.3d at 296, 298 [(2nd Cir. 2006)], and *Allstate Ins. Co. v. Nassiri,* 2011 WL 2977127, *5–6 (D.Nev.2011). In *Wendt v. Host International, Inc.,* 125 F.3d 806, 814 (9th Cir.1997), the Ninth Circuit identified several factors that the district court may consider in deciding whether to impose Rule 37(c)(1)'s exclusion sanction. Those factors include (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the other parties, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions. Although a finding of willfulness or bad faith is not required in order to impose the evidence preclusion sanction, willfulness or bad faith is clearly a factor in deciding the appropriate level of sanction. [Additional citations omitted.]

Here, neither party argues the factors established in *Wendt*. Rather, both parties focus solely on the terms appearing in Rule 37. Defendant also does not argue substantial justification for its

4

failure to discover and disclose the Card History at any time prior to January 2019. Rather, Defendant argues only that the late discovery is harmless. Plaintiff argues both a lack of substantial justification and that it will suffer harm if the documents it seeks to exclude are not stricken.

In support of its position, Plaintiff argues that, in deposition, national service center manager, Shelia Glenn, disingenuously "testified that there was no documentation for the tracking of hours worked in regard to Plaintiff's former position with Defendant."[2] Plaintiff also argues that because the Card History was "readily producible" in response to Plaintiff's Request to Produce No. 32, and that the identification of the documents were the result of an "epiphany" (a term also used by Defendant), Defendant fails to meet its burden of showing substantial justification or harmlessness.

Defendant argues—because "GES' position that Hutchinson did not come to work on September 10 is no surprise" to Plaintiff—no harm was done by the belated disclosure. Defendant also points to a produced email stating that Plaintiff called in to state she would not be in that day and cites to deposition testimony of "Ms. Bell and documentation showing that Hutchinson took a full vacation day on September 10." Finally, Defendant argues that the untimely produced Card History documents favor Defendant and, therefore, there would have been no reason to withhold these documents during discovery.

The existence of the Card History clearly came as a surprise to both parties given they agreed that Defendant's in-house counsel had an "epiphany" during the Court-sponsored settlement conference. Moreover, there is no doubt that (1) the documents address a key fact in the case: Defendant's position regarding whether Plaintiff was at work on September 10, 2014, and (2) the documents were not produced at any time during the discovery period (extended four times). In fact, it was 11 months after the close of discovery, and months after the Motion for Summary Judgment was decided that Defendant's in-house counsel epiphany occurred.

---

[2] The Card History does not track hours worked. Rather, it tracks the access (or lack of access) to certain portions of Defendant's facility. Hence, the Court does not find Ms. Glenn's testimony disingenuous (which would have been a concern had Ms. Glenn stated there was no record of individuals access to locked areas of Defendant's facility).

5

As to the factors cited in *Jackson v. United Artists Theatre Circuit, Inc.*, as well as those discussed in *Silvagni v. Wal-Mart Store, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017), the public's interest in expeditious resolution of litigation and the court's need to manage its docket (perhaps said succinctly as preventing disruption of the trial), as well as the risk of prejudice to Plaintiff all weigh in favor of excluding the Card History documents. That is, to cure any prejudice to Plaintiff arising from Defendant's late disclosure of the Card History documents, Defendant offers and argues a deposition of a custodian of records is sufficient. However, to cure the prejudice arising from the late disclosure of a type of document never mentioned, let alone disclosed at any time during the discovery period, it would seem Plaintiff might want to question Plaintiff's supervisor and other witnesses about these documents, and the card access system generally. Thus, a single custodian deposition would not likely cure the prejudice. Thus, a cure to Defendant's late disclosure could require reopening discovery, which at this juncture, is the very antithesis of the Court's ability to control its docket and contrary to an expeditious resolution of the litigation.[3]

Given that Defendant is not denied an ability to mount a meaningful defense to Plaintiff's claims in the absence of the Card History through introduction of the email and testimony identified in the Response (ECF No. 59), public policy in favor of disposition on the merits of the case is not undermined by exclusion of the Card History documents.

In all, despite no trial disruption or bad faith caused or intended by Defendant, the Court does not find the extremely belated disclosure of the Card History was harmless, and some sanction is appropriate. Plaintiff was denied the ability to question witnesses regarding the existence of the Card History, and who and how the History is kept. Plaintiff was also denied the opportunity to question the accuracy of the records through discovery. Given that Defendant is not denied an ability to mount a meaningful defense to Plaintiff's claims, and the burden in this instance was on

---

[3] With respect to bad faith, the Court finds this argument unavailing. There is no evidence that Defendant withheld the Card History documents for an illicit purpose.

Defendant as "the party facing discovery sanctions under Rule 37(c)(1) to prove harmlessness[,]" (*Jackson*, 2012WL 845646 *3 citing *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008)), the Court finds Defendant has not met its burden.[4]

With respect to Plaintiff's request for attorney's fees, this request is denied as the sanction described above is sufficient and appropriate to the totality of the circumstances.

For the reasons stated, IT IS HEREBY ORDER THAT:

Plaintiff's Motion to Exclude and for Attorney's Fees Pursuant to FRCP 37 is GRANTED in part and DENIED in part. Plaintiff's Motion is GRANTED to the extent that Defendant's untimely production of the Card History documents shall be excluded from use by Defendant in its case-in-chief. Plaintiff's Motion is DENIED as to Plaintiff's request for attorney's fees.

DATED THIS 13th day of August, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] *See also, Carreon v. Smith's Food & Drug Stores, et al.*, No. 2:18-CV-01933-APG-NGK, 2019 WL 3716895 *4–5 (Aug. 6, 2019, D. Nev).